**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHARITA PERRY, | ) | CASE NO. 1:19 CV 02383 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Sharita Perry, challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. (the Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.    Procedural History

On May 20, 2016, Plaintiff filed her applications for DIB and SSI, at issue here, alleging

a disability onset date of December 13, 2014. (R. 8, Transcript (Tr.) Tr. 297-309).[1] The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 243-65). Plaintiff participated in the hearing on May 23, 2018, was represented by counsel, and testified. (Tr. 267, 66-105). At the hearing, Plaintiff amended her alleged onset date to January 20, 2016. (Tr. 76). A vocational expert (VE) attended the hearing and testified. (*Id.*). On September 5, 2018, the ALJ found Plaintiff not disabled. (Tr. 42-65). On August 9, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case (R. 9, 11); and Plaintiff asserts that "The Administrative Law Judge's Decision is not Supported by Substantial Evidence Because She Improperly Rejects the Treating Physician's Opinion and She Adopts an Inaccurate Hypothetical Question." (R. 9, PageID# 803).

## II.     Relevant Facts

### A.     Background

Plaintiff was born in 1985 (Tr. 297), she has a high school degree, a medical assistant license, and a medical office records management diploma. (Tr. 297, 80). At the time of the hearing, Plaintiff was employed at a call center as a patient care representative. (Tr. 81-82). Plaintiff worked 9:00 AM to 5:00 PM, five days a week, earning $15.00 an hour. (Tr. 82).

---

[1] Plaintiff filed a previous application for DIB and SSI, on October 17, 2012, alleging a disability onset date of November 18, 2006. (Tr. 142). An Administrative Law Judge found Plaintiff not disabled, on December 12, 2014. (Tr. 139-155). Plaintiff asserts that new and material evidence support deviating from the 2014 ALJ decision. (Tr. 73).

**B.** **Relevant Medical Evidence**[2]

**1.** **Treatment Records**

In 2006, Plaintiff was diagnosed with Chiari I malformation and pseudotumor. (Tr. 417). Plaintiff also has a history of migraines. (Tr. 417). On January 28, 2016, Plaintiff was admitted to the hospital due to worsening headaches. (Tr. 417). She presented with a severe headache with pain and pressure, along with dizziness, left hand weakness, tremors and vision blurriness. (Tr. 420). An MRI revealed slightly increased herniation of her cerebellar tonsils with minimal syringomyelia. (Tr. 428). The physician compared this MRI to a scan done in 2006 and opined that Plaintiff's headaches were caused by a Chiari malformation. (Tr. 437). The physician recommended surgical decompression. (*Id.*).

On March 30, 2016, Dr. Alan Hoffer examined Plaintiff as a follow up from her January 28, 2016 hospitalization. (Tr. 614). Plaintiff informed Dr. Hoffer that she had a loss of strength in her left hand, headaches, blurry vision, and pain from her neck into her shoulder. (Tr. 614). Dr. Hoffer opined that Plaintiff's headaches were consistent with Chiari malformation, and that she was a candidate for a Chiari decompression with duraplasty. (Tr. 616).

Plaintiff underwent a Chiari decompression with duraplasty on May 26, 2016. (Tr. 519). On June 7, 2016, Plaintiff presented to the emergency room with complaints of head pressure. (Tr. 504-506). A CT scan revealed fluid collection along the craniectomy and posterior subcutaneous deep fascia of the neck, suggestive of pseudomeningocele. (Tr. 513). Plaintiff was admitted and had a lumbar drain placed. (Tr. 507). She had a preoperative diagnosis of intracranial hypertension

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

and pseudomeningocele for which Plaintiff underwent a right frontal shunt with frameless stereotaxy on June 9, 2016. (Tr. 517).

On June 27, 2016, Plaintiff was examined by Dr. Hoffer, and noted having headaches and pressure two to three times a week, which was an improvement. Plaintiff reported word-finding difficulty, forgetfulness and confusion. (Tr. 611). The doctor noted she was recovering well and to follow-up in two months. (Tr. 612).

In July 2016, Dr. Herschel Pickholtz, Ed.D. performed a consultative examination. (Tr. 530-540). Dr. Pickholtz opined that Plaintiff was slightly impaired in her ability to understand, remember, and carry out instructions and perform simple, routine tasks. (Tr. 539). The doctor also opined that Plaintiff was somewhat impaired in her capacity to relate to coworkers and others, and in her capacity to handle work stress and pressure, but not to the point that work was precluded. (Tr. 539).

On September 21, 2016, Plaintiff again saw Dr. Hoffer regarding her history of Chiari malformation with decompression and shunt placement. (R. 608). Plaintiff reported feeling tired and having daily headaches. (Tr. 608). Dr. Hoffer opined that much of Plaintiff's neck pain was related to post-surgical scarring and referred her to physical therapy to work on neck strength and flexibility. (Tr. 609).

On September 23, 2016, Plaintiff began treating with Dr. Deborah Reed, a neurologist specializing in headaches. (Tr. 696). Plaintiff reported that her headaches got worse in November 2006, following the birth of her son earlier that year, but they had improved since the decompression in May of 2016 and shunt placement in June of 2016. (Tr. 696). Plaintiff took medications as necessary for headaches and had trouble falling and staying asleep. (Tr. 696-670). She reported pain at the surgical area. (Tr. 697). Dr. Reed prescribed Neurontin and Norflex to

address Plaintiff's headaches. (Tr. 700).

On November 7, 2016, Plaintiff was admitted to the hospital due to a progressive headache. (Tr. 554). A lumbar puncture demonstrated opening pressure and an exploratory surgery of the shunt was performed on November 8, 2016, due to the return of symptoms. (Tr. 556). A post-operative CT showed that the catheter was in a good position and that her pseudomeningocele had improved. (Tr. 583, 587, 713-14).

Dr. Hoffer examined Plaintiff on December 12, 2016. Plaintiff was recovering well from surgery and her shunt appeared to be working better. (Tr. 606). Plaintiff treated with Dr. Reed in December of 2016 and February of 2017, and the doctor reported that Plaintiff had tenderness over her shunt tubing. (Tr. 702, 704, 712).

Plaintiff saw Dr. Hoffer, on January 23, 2017, with a recurrence of headaches, now at the crown of her head, in the back of her head and sometimes in the bitemporal regions. (Tr. 602). The record notes active problems include acute intractable headache, Chiari malformation, edema of the optic nerve, migraine headaches, osteoarthritis of the cervical spine among other conditions. (Tr. 602-603).

On February 24, 2017, Plaintiff told Dr. Reed that the shunt made things better initially, but the headaches became worse. (Tr. 709). Dr. Hoffer noted, on March 22, 2017, that Plaintiff continued to have drainage from part of her incision, but there was no significant fluid collection under the incision and no signs of significant infection. (Tr. 599- 600). Plaintiff continued to treat with Dr. Reed on April 28, 2017, July 28, 2017, and on December 29, 2017, regarding her ongoing headaches. (Tr. 716, 724-725, 730).

On November 19, 2017, Plaintiff was treated in the emergency department for worsening headaches. (Tr. 655). Image studies showed an apparent kinking of the right frontal

5

ventriculostomy catheter in the right upper quadrant. (Tr. 662).

In March of 2018, Plaintiff was treated in the emergency department for worsening headaches. (Tr. 739). She was assessed with pseudotumor cerebri (improving) and acute intractable headache (new). (Tr. 740). The attending physician determined that her headache was not related to her Chiari I malformation and her shunt appeared to be functioning well. (Tr. 741).

### 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

State agency physician, Leigh Thomas, M.D. opined, on September 15, 2016, that Plaintiff could perform work at the medium exertion level with no other limitations. (Tr. 181-199). The doctor adopted the residual functional capacity from the 2014 ALJ decision, and noted "there is no MER in claimant's current file indicating any significant changes in physical function." (*Id.* at 199).

On reconsideration dated March 8, 2017, state agency physician, Maria Congbalay, M.D. opined that Plaintiff could perform a range of light work that involved frequently balancing, kneeling, crouching, and climbing ramps/stairs; with additional limitations including never climbing ropes, ladders or scaffolds; occasionally stooping and crawling; and avoiding all exposure to hazards. (Tr. 203-220).

Dr. Reed completed a headache residual functional capacity questionnaire in May 2017. (Tr. 651-53). The doctor described severe headaches with vertigo, photosensitivity, visual disturbances, mood changes, mental confusion and dizziness. (Tr. 651). Triggers included bright lights, hunger, weather changes, noise, lack of sleep and strong odors. (Tr. 651). The prognosis was chronic, and Dr. Reed noted these headaches are expected to last twelve months. (*Id.*). Dr. Reed also opined Plaintiff would need unscheduled breaks to lie down during eight-hour workdays every two hours for thirty minutes, and Plaintiff could miss work more than four times per month

(Tr. 652).

### C. Relevant Hearing Testimony

Plaintiff testified that she lived at home with her fiancé and two children. (Tr. 77). She explained that she and her mom do the grocery shopping, Plaintiff does most of the cooking, some laundry, and her son and fiancé help with the housework. (Tr. 78). Plaintiff testified that she stopped driving about four years ago due to finances and health. (Tr. 79). She stated that she has a high school diploma, a medical assistance license and a medical office records management diploma. (Tr. 80). Plaintiff testified that she is currently working full time at a call center, earning $15.00 an hour. (Tr. 80-81). Her job entails transferring calls and scheduling appointments. (Tr. 82). She is seated most of the day. (Tr. 82).

Plaintiff explained that her headaches got worse when she was pregnant with her second child. (Tr. 89). She had tingling in her fingers and started losing feeling in her left hand. (Tr. 89). Her neurosurgeon suggested decompression surgery, which she obtained. (Tr. 89). After the surgery, she had a build-up of fluid in her brain and had to have a shunt inserted. (Tr. 89). The shunt did not work properly, and it was replaced in 2016. (Tr. 89-90).

Plaintiff described having headaches, loss of balance, and memory issues even after her shunt placement. (Tr. 90). She testified to not being able to get out of bed when she has a headache and described missing work. (Tr. 92). She reported missing four or five days since she started her current job, and had been warned by her employer about her absences. (Tr. 92). Plaintiff further testified that since 2014 her headaches have become more frequent. (Tr. 93). She explained that since 2016 she has headaches daily, but some are more severe than others. (Tr. 93-4). She described migraine headaches in which it hurt to blink, leading her to lie down and take medicine.

(Tr. 94). She testified to taking six medicines to treat her headaches. Plaintiff cannot predict when she will have a migraine headache (Tr. 90), and sometimes they last a couple of days. (Tr. 94).

Plaintiff testified that on the days she has headaches she does not shop and her fiancé cares for the children. (Tr. 96). She noted that her fiancé has missed work because of Plaintiff's headaches. (*Id.*). Plaintiff's mother lives a short distance away and helps her with various matters, about twice per week. Her cousin also helps her when necessary. (Tr. 97). Plaintiff described missing weddings, funerals, and birthday celebrations due to her headaches. (Tr. 98).

During the administrative hearing, the ALJ asked the VE the following hypothetical question:

> I would like you to consider a person with the same age, education and past work as the Claimant, who is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds, is able to stand and walk six hours of an eight-hour workday, is able to sit for six hours of an eight-hour workday, would have unlimited push and pull other than shown for lift and/or carry, could frequently climb ramps and stairs and never climb ladders, ropes or scaffolds, could frequently  balance, kneel and crouch and occasionally stoop and crawl and must avoid all exposure to hazards. And by that, I mean unprotected heights and hazardous machinery.
>
> In addition, this hypothetical individual can perform simple, routine tasks, consistent with unskilled work with no fast paced or high production quotas and with superficial interaction with others. And by superficial, I mean of a short duration for a specific purpose and can perform work within infrequent change.
>
> Given such a hypothetical individual, first off, would this hypothetical individual be able to perform the Claimant's past work as those occupations are either generally and/or actually performed?

(Tr. 102-03). The VE testified that the individual would not be able to perform Plaintiff's past work[3] but would be able to perform the following jobs: marker, garment sorter, office helper. (Tr.

---

[3] The VE categorized Plaintiff's past relevant work as call center operator, optometric assistant, suite attendant classified as server, and customer service clerk; and the ALJ noted her current position "was doing more patient customer representative work with some scheduling and call

103). The ALJ added further limitations to the hypothetical:

> I'd like you to further assume that this hypothetical individual would be absent from work more than four times per month. Would that hypothetical individual be able to perform those jobs you've identified?
>
> A. No, Your Honor. That's not covered under the DOT, but based on my experience, HR and policy, the maximum absenteeism tolerated is one day per month. Anything beyond that becomes work preclusive.
>
> Q. Okay. I'm removing that limitation and giving you a different one in its place. I'd like you to assume that this hypothetical individual would require unscheduled breaks every two hours for approximately 30 minutes each time in order to be able to lay down and rest. Would that hypothetical individual be able to perform those jobs you've identified?
>
> A. No, Your Honor. Again, that's not covered under the DOT, but the unscheduled breaks will put the person off task at greater than 10 percent, which would [be] work preclusive. And it would also be considered an accommodation if it were permitted. And that would eliminate full-time work.

(Tr. 104).

## III.     Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage

---

center[,]" which the VE classified "as outpatient receptionist….semiskilled and sedentary as generally and actually performed." (Tr. 100-102; *see also* Tr. 57-58).

process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2.  The claimant engaged in substantial gainful activity during the following periods: February 2018 through the date of this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.  However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: migraine headaches with Chiari I malformation and pseudomeningocele with shunt placement, history of idiopathic intracranial hypertension, pseudotumor cerebri syndrome, osteoarthritis of the cervical spine, obesity, affective disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she is able to occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. She is able to stand and walk six hours of an eight- hour workday, and is able to sit for six hours of an eight-hour workday, with unlimited pushing and pulling other than shown for lifting and/or carrying. She can frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, and can frequently balance, kneel, and crouch with occasional stooping and crawling. She must avoid all exposure to hazards, meaning unprotected heights and hazardous machinery. She can perform simple, routine tasks (unskilled work) with no fast pace or high production quotas, and with infrequent change. She can have superficial interaction with others (meaning, of a short duration for a specific purpose).

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on *** 1985 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569,

404.1569a, 416.969, and 416.969a).

12. The claimant has not been under a disability, as defined in the Social Security Act, from December 13, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 48-59).

## V.    Law and Analysis

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.      Plaintiff's Assignments of Error

Plaintiff contends that the ALJ's decision is not supported by substantial evidence for two reasons: 1) "The ALJ erred in rejecting the opinion of [Plaintiff's] treating neurologist regarding her work-related limitations" and 2) "because she relied on vocational expert testimony in response to an incomplete and inaccurate hypothetical question." (R. 9, PageID# 803).

### 1.      The ALJ's Treatment of Dr. Reed's Opinion

Plaintiff asserts that the ALJ did not properly credit the opinion of her treating physician, Dr. Reed, and failed to give good and valid reasons for not doing so. (R. 9, PageID# 804). The Commissioner argues that the evidence supports the ALJ's assessment of the doctor's opinion. (R. 11, PageID# 824).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if [the ALJ] finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th

13

Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

In addition, it is well-established that ALJs may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (citing *Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Reed's medical source statement as follows:

14

> Deborah Reed, M.D., the claimant's treating neurologist, completed a medical source statement in May 2017 (Ex. Bl IF). Dr. Reed opined that when the claimant has a headache, she would generally be precluded from performing even basic work activities and would need to take unscheduled breaks every two hours to lie down for about 30 minutes each time (Ex. Bl lF/3). Dr. Reed added that the claimant would likely be absent from work more than four times per month (Ex. Bl lF/3). The undersigned gives Dr. Reed's opinion little weight, finding that the record does not support the absenteeism or unscheduled breaks she suggests. The record shows that the claimant's headaches have worsened, that she has had decompression surgery, shunt placement with subsequent malfunction and surgery to revise the shunt placement, and that despite all of these procedures, she continues to have frequent headaches and visits to the emergency department, but that she is able to work at a call center, consistent with a finding of light work with the postural and environmental limitations as described in the residual functional capacity (Ex. B3F; B4F; B8F; B9F; Bl4F).

(Tr. 56).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

The ALJ's decision acknowledged that Dr. Reed was Plaintiff's treating neurologist. (Tr. 57). The ALJ cites to and discusses Dr. Reed's May 2017 medical source statement. (Tr. 57). Dr. Reed's statement specifically notes that Plaintiff's initial visit with her was on September 23, 2016 and at the time of the statement, Plaintiff had treated with Dr. Reed for five visits. (Tr. 651). The ALJ's decision considered the length of the treatment relationship, the frequency of examination,

the nature and extent of the treatment relationship, and Dr. Reed's specialization as evidenced by the finding that Plaintiff's "neurological impairments are managed by a medication regimen and regular follow-up with her neurologist (Ex. B14F)," and that Plaintiff "uses oral medication and pain relief gel, which her neurologist prescribes, to treat her symptoms (Ex. B14F/18)." (Tr. 54, citing Dr. Reed's medical records).

The ALJ concluded that Dr. Reed's opinion was not supported by the record. (Tr. 57). Pursuant to the regulations, "[s]upportability" is one of the factors specifically set forth in the regulations used to evaluate opinion evidence. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3).

The ALJ acknowledged that that despite significant medical treatment, Plaintiff's headaches worsened. At the same time, however, the ALJ pointed to the fact that Plaintiff returned to work in mid-2017, and had two jobs in 2017 that earned less than substantial gainful activity (Tr. 48, 55), as well as Plaintiff's testimony that on February 20, 2018, she started working at call center from 9:00 AM to 5:00 PM, five days a week, earning $15.00 per hour. (Tr. 48). The ALJ explained that despite the allegation of the worsening of her symptoms, the fact that Plaintiff was able to work full time was "consistent with a finding of light work with the postural and environmental limitations as described in the residual functional capacity[.]" (*Id.*). In other words, Dr. Reed's opinion regarding absenteeism and unscheduled breaks was not supported by Plaintiff's *actual* work performance.

Plaintiff's *actual* work performance was consistent with the record of her physical impairments and limitations, confirming that she was capable of performing light work. (Tr. 57).

To that end, the ALJ gave great weight to State agency medical consultant Dr. Maria Congbalay's opinion. The ALJ addressed the doctor's opinion issued at the administrative reconsideration level, as follows:

> Maria Congbalay, M.D. opined that the claimant could perform work at the light exertional level, further limited to frequently climbing ramps/stairs, but never climbing ladders, ropes, or scaffolds, and frequently balancing, kneeling, and crouching, and occasionally stooping and crawling (Ex. B6A/11; B7A/11).
>
> Further, Dr. Congbalay opined that the claimant should avoid all exposure to hazards (e.g., machinery or heights, etc.) (Ex. B6A/12; B7A/12). The undersigned gives great weight to Dr. Congbalay's opinion, finding that her opinion is consistent with the objective medical evidence in the record. The record shows that the claimant's headaches have worsened, that she has had decompression surgery, shunt placement with subsequent malfunction and surgery to revise the shunt placement, and that despite all of these procedures, she continues to have frequent headaches and visits to the emergency department, consistent with a finding of light work with the postural and environmental limitations as described in the residual functional capacity (Ex. B3F; B4F; B8F; B9F; B14F).

(Tr. 56).

Reading the decision as a whole, it is apparent the ALJ considered the overall record when assessing Dr. Reed's opinion. Before specifically addressing the doctor's opinion, the ALJ detailed Plaintiff's testimony and medical history over nine single-spaced pages, further assessing pertinent opinion evidence and concluding as follows:

> Various factors are inconsistent with limitations to the degree alleged. While the claimant certainly has a long and complicated history of migraine headaches, with Chiari I malformation, pseudomeningocele with shunt placement, idiopathic intracranial hypertension, and pseudotumor cerebri syndrome which, together, have required surgeries, procedures, and hospitalizations. However, she returned to work in mid-2017, earning less than substantial gainful activity, and has been working full-time since February 2018. She did testify, however, that as of the date of the hearing, she had missed about four or five days due to her neurological symptoms. The claimant's physician referred her to physical therapy for her osteoarthritis of the cervical spine, but it does not appear that the claimant followed up on that referral. It does not appear that she has been counseled specifically regarding her

obesity. As for her mental health impairments, there is nothing in the record showing that she has had prescribed medication, outpatient or inpatient treatment. While she participated with a community mental health program during 2017, she cancelled or did not show up for several appointments. She expressed interest in seeing a therapist, but there is no record of any therapy taking place.

Taken together, the record suggests the claimant's impairments impose some limitations, but the degree of limitation that is consistent with the record has been accounted for by the restrictions noted in the residual functional capacity above.

(Tr. 53-55).

Having considered the parties' arguments and governing law, the court finds that the ALJ's discussion encompassed the pertinent regulatory factors and satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244, 2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828, at *4 (6th Cir. Mar. 17, 2016). Although the ALJ could have provided a more detailed analysis including each of the regulatory factors, it is apparent that the ALJ considered the proper factors in determining how much weight to ascribe to Dr. Reed's opinion, as the underlying decision does not need to explicitly discuss each regulatory factor. *See Francis*, 2011 WL 915719, at *3 (the regulations require only consideration of the factors and does not require an the ALJ to articulate "an exhaustive factor-by-factor analysis"); *Gayheart*, 710 F.3d at 376.

For these reasons, the court recommends that the first assignment of error be rejected.

## 2.      The Hypothetical and the ALJ's RFC Determination

Plaintiff contends that "the ALJ's decision is not supported by substantial evidence because the ALJ adopted vocational expert responses to an incomplete hypothetical question to support her decision to deny benefits." (R. 9, PageID# 809). Plaintiff argues that the RFC (and therefore the ALJ's hypothetical question) failed to account for her testimony and Dr. Reed's

18

opinion. (R. 9, PageID# 811). Plaintiff asserts that the ALJ's conclusion regarding her RFC assessment is not an accurate depiction of her work-related limitations. (R. 9, PageID# 810). Specifically, she contends that the ALJ should have adopted the scenario describing that Plaintiff would miss work at least once a week. (R. 9, PageID# 811).

The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a).[4] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or

---

[4] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010)) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011) (Gaughan, J).

According to Plaintiff, the ALJ should have incorporated Dr. Reed's opinion that Plaintiff would be absent from work more than four times per month due to her headaches. (R. 9, PageID# 811). However, as noted above, the ALJ properly considered the necessary factors in determining how much weight to ascribe to the doctor's opinion. Although Plaintiff disagrees with the ALJ's assessment of Dr. Reed's opinion, this court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 2008 WL 162942 at * 6 (6th Cir. 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.").

The ALJ gave great weight to Dr. Congbalay's opinion, which supports the RFC. (Tr. 56). State agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010)

(finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.").

A "plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination." *White v. Colvin*, No. 3:13-cv-02106, 2014 U.S. Dist. LEXIS 142152, at *17-18 (N.D. Ohio July 21, 2014). The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the RFC was determined based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009).

Plaintiff also points to her testimony to support her argument that the ALJ's RFC was inaccurate. Plaintiff does not, however, assert or support an argument that the ALJ erred in determining the credibility of her subjective testimony. Rather, Plaintiff simply labels the testimony as credible and argues that the ALJ failed to *consider* her testimony that "confirms that

21

she has not been able to sustain full time work." (R. 9, PageID # 809). The ALJ clearly considered

Plaintiff's testimony, summarizing it as follows:

> The claimant provided the following testimony at the hearing. Her headaches have worsened since January 2016, and she has gone to the emergency department for them. She said her headaches worsened during her most recent pregnancy and she had tingling in her arms, so she had decompression surgery. She said she was having headaches, loss of balance and memory loss. Since the revision of the shunt, she still has pressure in her head as well as headaches. She said she was recently in the emergency room because of intractable headache pain. She has had at least ten spinal tap procedures. She has missed days from work because of her headaches. At her current job, she has missed four or five days because of her headaches and she has received a warning about missing work or leaving early. Her migraine headaches are more frequent. It can be difficult for her to tell the difference between pressure headaches and migraine headaches. During a headache, it hurts to blink or move. She takes her medication and hopes that it works. She goes to her room and lies down in a quiet space. When a headache is coming on, she gets visual disturbances and has problems with balance. She takes six different medications for her headaches.

> She is able to do the laundry and most of the cooking. Her fiancé and son help with the rest of the housework. Her mother helps her do the grocery shopping. However, on a day when she has a headache, she cannot do any of those things. Her fiancé has missed work because of her headaches. Her mother comes over about twice a week to help, as well. She has a cousin who can occasionally come help. She said she has missed events such as birthdays, weddings, and funerals because of her headaches. She used to drive but no longer does. She gets places either with her mother's help or by using public transportation. She has no hobbies. She uses a computer and cell phone for communication. She was attending college classes in 2017 in a classroom. She watches television and listens to music. She began working in February 2018 as a patient care representative at a call center. She said she feels worthless, having to depend on somebody else. Her memory gets foggy and she has trouble thinking correctly.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 53).

The ALJ also considered Plaintiff's current employment, which was consistent with the RFC, and inconsistent with her testimony and with Dr. Reed's opinion. (Tr. 55). The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 U.S. Dist. LEXIS 121965, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Although the ALJ's credibility determinations must be "based on a consideration of the entire case record[,]" *Rogers*, 486 F.3d at 247-248, the ALJ's decision need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Newsome v. Comm'r of Soc. Sec.,* No. 1:18-cv-2707, 2019 U.S. Dist. LEXIS 223785, at *29 (N.D. Ohio Dec. 5, 2019). Reading the decision as a whole, it is clear that the ALJ considered the necessary factors in assessing the credibility of Plaintiff's statements concerning the effects of her symptoms. *See* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4.

Although Plaintiff clearly believes more restrictive limitations could have been assessed based on the medical record, the Plaintiff's filings have not shown that the ALJ applied the wrong legal standard; nor do they establish a violation of the substantial evidence standard. For the above reasons, the court recommends that the second assignment of error be rejected.

## VI.    Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

*David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: December 30, 2020

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**